**GODES & PREIS, LLP**
Joseph M. Preis (State Bar No. 212998)
  *jpreis@gaplegal.com*
Oliver B. Dreger (State Bar No. 261351)
  *obdreger@gaplegal.com*
Richard K. Angel (State Bar No. 339028)
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618
Telephone:  949.468.0051
Facsimile:   949.872.2281

Attorneys for Plaintiff
FRONTLINE SERVICES, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRONTLINE SERVICES, INC., a Wyoming corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SEASPINE ORTHOPEDICS CORPORATION, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.:   **'23 CV0077 JAH  BGS**<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>2) **BREACH OF CONTRACT**<br>3) **FRAUDULENT CONCEALMENT**<br>4) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>5) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>6) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>7) **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUS. & PROF. CODE, § 17200, *ET SEQ.*)**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMPLAINT**

## NATURE OF ACTION

By way of this Complaint, Frontline Services, Inc. ("Frontline") alleges, *inter alia*, that SeaSpine Orthopedics Corporation ("Defendant") entered into and repeatedly renewed a Distributor Agreement ("Agreement")[1] with Frontline.  Then, after Frontline had built a reliable sales network and when the Agreement would soon expire, Defendant (1) presented an amendment to the Agreement in bad faith whereby Defendant could pursue Frontline's primary account, (2) acquired Frontline's primary sales representative and fraudulently concealed this fact from Frontline, and (3) withheld contractually owed funds from Frontline for at least one of its sales – a pattern of misconduct and prohibited business practices which have severely damaged Frontline and which was done as part of Defendant's unlawful scheme to force Frontline out of business.

## JURISDICTION

1.     This Court has jurisdiction over the subject matter of this Complaint pursuant to Title 28, United States Code § 1332 (diversity) because, as more fully averred below, complete diversity of citizenship exists in that the parties are citizens of different states and do not share citizenship of any state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.     This Court has personal jurisdiction over Frontline and Defendant because they consented as much in Section 13.6 of the Agreement, which is titled "Governing Law and Jurisdiction" and says in relevant part, "[t]his Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of California.  The federal and state courts located within the County of San Diego, State of California shall have exclusive jurisdiction to adjudicate any dispute

---

[1]   A copy of the Agreement, entered into on or about October 31, 2017, and all amendments thereto are equally available to Defendants and are not attached hereto out of an abundance of caution because the Agreement contains a Confidentiality provision. (Agreement, § 10.)

-1-
**COMPLAINT**

arising out of this Agreement." Additionally, this Court has personal jurisdiction over Defendant because its principal place of business is in Carlsbad, California. (*See* ¶ 4, *infra*.)

## PARTIES AND STANDING

3. Frontline is a corporation incorporated under the laws of the State of Wyoming, and its principal place of business is in Rock Springs, Wyoming.

4. Frontline is informed and believes, and on that basis alleges, that Defendant is a corporation incorporated under the laws of the State of Delaware, and its principal place of business is in Carlsbad, California.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants herein designated by the fictitious names Does 1 through 10, inclusive, are unknown to Frontline, who therefore sues said defendants by such fictitious names. When the true names and capacities of such fictitiously named defendants have been ascertained, Frontline will amend this pleading accordingly. Frontline is informed and believes, and based thereon alleges, that each of the fictitiously named defendants is in some manner responsible for the acts, omissions, and occurrences, and actually and proximately caused and contributed to the various injuries and damages, alleged herein.

6. Frontline is informed and believes, and on that basis alleges, that at all times herein mentioned, each of the Defendants, including Does 1 through 10, was the alter ego, agent, servant, accomplice, and/or employee of each other, acting within the course and scope of said relationships, and whose acts or omissions alleged herein were authorized, adopted, approved and/or ratified by each other.

## VENUE AND FORUM

7. Venue and forum are proper in the Southern District of California pursuant to the consent of the parties, as expressed in Section 13.6 of the Agreement, and, pursuant to Title 28, United States Code § 1391(b), because Defendant has its principal place of business in this district.

-2-
**COMPLAINT**

**FACTS COMMON TO ALL CAUSES OF ACTION**

8.      On or about October 1, 2017, Frontline and Defendant entered into an initial agreement for the distribution of **hardware products** in the healthcare industry ("First Contract").  On October 31, 2017, Frontline and Defendant further entered into the Agreement on which Frontline bases its claims, which governed the distribution of **orthobiologic products** in the healthcare industry.  By entering into the Agreement, Frontline contracted "to serve [Defendant] as an independent contractor by representing [Defendant's] Products,"[2] and Defendant agreed "to retain the services of [Frontline] to represent the Products."

9.      Pursuant to Section 6.2 of the Agreement, as compensation for its services, Defendant agreed to pay Frontline "a Service Fee at the rates set forth in [Section 1.30 of the Agreement] for Product orders that have been (a) solicited by [Frontline] within the Field and Territory."[3]  At all times relevant to this Complaint, Exhibit 1.34 of the Agreement and its subsequent amendments have provided Frontline with "Non-Exclusive Territory" for selling Products at, *inter alia*, Aspen Mountain Medical Center in Rock Springs, WY ("Aspen Mountain"), and St. Luke's Magic Valley Medical Center in Twin Falls, ID ("St. Luke's").

10.     Pursuant to Section 7.1 of the Agreement, the Agreement automatically renewed on January 1, 2019, and again on January 1, 2020, on January 1, 2021, and on January 1, 2022, each for a period of one (1) year.  Section 7.1 of the Agreement provides that the Agreement would naturally terminate on December 31, 2022.

11.     At all times relevant to this Complaint, Frontline's point of contact with Defendant for orthobiologic sales was Kelly Harrington ("Mr. Harrington"),

---

[2]  Pursuant to the Agreement, "Product(s)" means the products specified in Exhibit 1.24 of the Agreement and its subsequent amendments. (Agreement, § 1.24)

[3]  Pursuant to the Agreement, "Field" means "the market for the Products in the spine, orthopedics, and trauma fields," (Agreement, § 1.11), and "Territory" means specific hospitals or specific physicians, as set forth in Exhibit 1.34 [of the Agreement]." (Agreement, § 1.34.)

Orthobiologics Territory Manager for Defendant.

**FRONTLINE DEVELOPED A VIABLE BUSINESS RELATIONSHIP WITH**

**DR. JUSTIN DAZLEY**

12. On or about September 1, 2018, Frontline and Defendant entered into "Amendment No. 1 to [Agreement]" ("Amendment 1"), which provided Frontline with "Exclusive Territory" as to Dr. Justin Dazley ("Dr. Dazley") for his surgeries performed at Aspen Mountain, making Frontline the only entity which could sell Products to Dr. Dazley at that location.

13. Frontline is informed and believes, and on that basis alleges, that beginning prior to Amendment 1, Dr. Dazley was the brother-in-law of Frontline's CEO Joshua Nacey ("Mr. Nacey") and that Dr. Dazley had not previously conducted any business with Defendant. Further, Frontline alleges on information and belief that Dr. Dazley would not have considered doing business with Defendant but for his pre-existing family relationship with Mr. Nacey. Throughout Frontline's business relationship with Dr. Dazley, Dr. Dazley was Frontline's primary account.

**FRONTLINE'S PRIMARY SALES REPRESENTATIVE**

14. Beginning in or about May 2019, Brad Bollwinkel ("Mr. Bollwinkel") began working for Frontline as a sales representative. At all times during Mr. Bollwinkel's employment with Frontline, he was contracted for the sale of both hardware products and orthobiologic products.

15. On information and belief, Frontline alleges that at all times relevant to this Complaint, Mr. Bollwinkel was the brother-in-law of Dr. Dazley. Mr. Bollwinkel quickly became Frontline's primary sales representative based on his frequent sales to Dr. Dazley.

**DEFENDANT PRESENTED AN AMENDMENT TO THE AGREEMENT IN**

**BAD FAITH**

16. On or about January 15, 2021, only two (2) weeks after the Agreement renewed for the penultimate time on January 1, 2021, Mr. Harrington sent Mr. Nacey

"Amendment No. 3 to [Agreement]" ("Amendment 3") *via* e-mail and called Mr. Nacey on the telephone, asking him to sign.  Trusting Mr. Harrington and without reading the document, Mr. Nacey signed Amendment 3 while still on the telephone with Mr. Harrington.

17.   Frontline alleges based on information and belief that between the execution of Amendment 1 and Amendment 3, Dr. Dazley had transitioned to performing his surgeries at St. Luke's in Twin Falls, ID.  Reflecting this change, Amendment 3 converted Frontline's Territory with respect to Dr. Dazley from Aspen Mountain to all hospitals in Twin Falls, ID.  However, Amendment 3 also converted Frontline's "Exclusive Territory" with respect to Dr. Dazley to "Non-Exclusive Territory," allowing other distributors or even Defendant itself to solicit Product orders from Dr. Dazley.  Frontline believes, and on that basis alleges, that Defendant drafted and presented Amendment 3 with the intent to redirect Dr. Dazley's business away from Frontline, using Frontline's employee Mr. Bollwinkel as a proverbial "double agent" in an unlawful scheme to interfere with Frontline's business and destroy it.

## DEFENDANT HIRED MR. BOLLWINKEL AND CONCEALED HIS DUAL EMPLOYMENT STATUS FROM FRONTLINE

18.   Frontline is informed and believes, and on that basis alleges, that in or about late January 2021, around the time Defendant presented Amendment 3 to Frontline, Mr. Harrington offered Mr. Bollwinkel a new employment arrangement in which Mr. Bollwinkel would work for both Frontline and Defendant.  Under the new agreement, Mr. Bollwinkel would secretly continue to sell hardware products for Frontline but would sell orthobiologic products directly for Defendant, unbeknownst to Frontline.  Frontline is informed and believes, and on that basis alleges, that Mr. Bollwinkel accepted Mr. Harrington's offer in late January 2021.

19.   Frontline alleges on information and belief that Mr. Harrington instructed Mr. Bollwinkel not to inform Frontline of his new dual employment status, but that

Mr. Harrington would inform Frontline. However, Defendant never informed Frontline of Mr. Bollwinkel's new employment. Instead, Frontline alleges based on information and belief that Defendant knowingly and intentionally concealed the fact of Mr. Bollwinkel's new employment from Frontline. Based on Defendant's concealment, Frontline unknowingly employed Mr. Bollwinkel for performing only half of his contractual duties, whereas, had it known the material, concealed truth, Frontline would have terminated him for his conflict of interest and/or sent another representative to sell orthobiologic products in his place.

20. Frontline believes, and on that basis alleges, that in hiring Mr. Bollwinkel and concealing his dual employment status from Frontline, Defendant intended to use Mr. Bollwinkel as its duplicitous agent, leveraging Mr. Bollwinkel's business and family relationships with Dr. Dazley to redirect Dr. Dazley's business away from Frontline.

21. Frontline did not discover Mr. Bollwinkel's dual employment status until March 2022, after Defendant had allowed the Agreement to renew once again for a final time and after Defendant had spent over one year converting Frontline's business network into its own. Frontline terminated Mr. Bollwinkel's employment on or about May 9, 2022, and alleges based on information and belief that between January 2021 and May 9, 2022, Mr. Bollwinkel sold orthobiologic products while still employed by Frontline, transactions that were subject to the terms of the Agreement and which entitled Frontline to Service Fees pursuant to Section 6.2 of the Agreement. However, to date, Defendant has not paid Frontline any Service Fees for the sale of orthobiologic products by Mr. Bollwinkel, purportedly on behalf of Defendant, between January 2021 and May 9, 2022, breaching its obligation to pay such Service Fees.

**DEFENDANT FURTHER BREACHED THE AGREEMENT BY WITHHOLDING ADDITIONAL SERVICE FEES FROM FRONTLINE**

22. On or about June 1, 2021, a representative of Frontline sold Products listed in Exhibit 1.24 of "Amendment No. 2 to [Agreement]" ("Amendment 2") within

-6-
**COMPLAINT**

Frontline's Field and Territory, with a Purchase Order ("P.O.") number of 1301754361-0-IMP ("Unpaid P.O."). Frontline was entitled to Service Fees for the Unpaid P.O. "during the month following the month in which [the] order [was] accepted," pursuant to Sections 6.2 and 6.2.5 of the Agreement. However, to date, Frontline has not received any payment from Defendant for the Unpaid P.O., in violation of Sections 6.2 and 6.2.5 of the Agreement.

## THE CUMULATIVE EFFECT OF DEFENDANT'S BAD FAITH MISCONDUCT

23.     Prior to the execution of Amendment 3 on January 15, 2021, Frontline had successfully conducted business in its Field and Territory, creating a reliable revenue stream and business network, primarily based on its relationships with Dr. Dazley and Mr. Bollwinkel. After the execution of Amendment 3, throughout 2021 and in the first few months of 2022, Frontline's revenue from Defendant significantly declined compared to the same relevant periods in previous years. Frontline alleges based on information and belief that its revenue declined primarily due to Dr. Dazley conducting business with Defendant through Mr. Bollwinkel, at the unlawful instigation of Defendant.

24.     Shortly after Frontline discovered Mr. Bollwinkel's dual employment status and subsequently terminated him on May 9, 2022, Defendant unilaterally terminated both the Agreement and the First Contract, on June 20, 2022.

25.     Frontline believes, and on that basis alleges, that Defendant's entire course of conduct in: (1) amending the Agreement in bad faith, (2) hiring Mr. Bollwinkel to pursue Dr. Dazley, (3) intentionally concealing Mr. Bollwinkel's dual employment status from Frontline, and (4) using Mr. Bollwinkel as a proverbial "double agent" and "mole" to Frontline's detriment, was an unlawful scheme designed to take advantage of Frontline's years of efforts to build a business network, claiming Frontline's primary client and Frontline's primary sales representative as its own, over the course of more than a year, thereby knowingly and unlawfully cutting off

Frontline's largest sources of income with the malicious intent to force Frontline out of business.

## FIRST CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against All Defendants)**

26.     Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 25, inclusive, as though fully set forth herein.

27.     Frontline and Defendant entered into the Agreement, a valid contract, on October 31, 2017.  Frontline performed all, or substantially all, of its duties arising from or related to the Agreement, and all conditions requiring Defendant's performance have occurred.

28.     Mr. Harrington, acting at all times in his capacity as an agent of Defendant, presented Frontline with Amendment 3 on or about January 15, 2021, which Mr. Nacey signed.

29.     Frontline believes, and on that basis alleges, that Defendant presented Amendment 3 to Frontline as part of a deliberate scheme to drive Frontline out of business by appropriating Frontline's foremost account and its foremost sales representative.  In doing so, Defendant did not act fairly and in good faith.  Although Section 13.5 of the Agreement allows the parties to amend the Agreement, presenting such an Amendment as part and parcel of a scheme designed to run Frontline out of business was an act of bad faith and frustrated the purpose of the Agreement and Frontline's rights to the benefits thereof.  In particular, Defendant's pattern of misconduct outlined above, which included the bad faith Amendment, frustrated Frontline's right to receive Service Fees based on Mr. Bollwinkel's sales, pursuant to Section 6.2 of the Agreement.

30.     As part of that scheme, Defendant relied on Frontline to build a profitable business relationship with Dr. Dazley, who only became affiliated with Defendant

based on his pre-existing family relationship with Mr. Nacey.

31.    With Dr. Dazley no longer exclusive to Frontline, Defendant became free to pursue Dr. Dazley itself and immediately crafted an employment arrangement with Frontline employee Mr. Bollwinkel, whereby Mr. Bollwinkel would secretly and underhandedly perform duties for Defendant that Mr. Bollwinkel was already contracted to perform for Frontline.

32.    Frontline is informed and believes, and on that basis alleges, that Defendant instructed Mr. Bollwinkel not to divulge his new employment arrangement to Frontline based on the false promise that Defendant would inform Frontline itself.

33.    Defendant never informed Frontline about its new agreement with Mr. Bollwinkel, and Frontline did not discover Mr. Bollwinkel's dual employment status until March 2022.  Frontline believes, and on that basis alleges, that Defendant never intended to inform Frontline of its agreement with Mr. Bollwinkel, but rather deliberately and fraudulently concealed its agreement with Mr. Bollwinkel from Frontline, causing Frontline to unknowingly employ Mr. Bollwinkel, who was acting as Defendant's agent while only performing half of his contractual duties to Frontline. Defendant's omission and concealment of such material facts caused Frontline to continue to employ Defendant's agent, rather than terminating Mr. Bollwinkel and/or sending another representative to sell orthobiologic products in his place.

34.    Frontline is informed and believes, and on that basis alleges, that between January 2021 and May 2022, Mr. Bollwinkel sold orthobiologic products within Frontline's Field and Territory and reported the sales directly to Defendant while still employed by Frontline.

35.    Frontline believes, and on that basis alleges, that Defendant crafted its agreement with Mr. Bollwinkel with the intent to use him as a "mole" and "double agent," secretly working on Defendant's behalf, unbeknownst to Frontline, in order to claim Frontline's business network as its own.

/ / /

36. Frontline is entitled to the payment of Service Fees by Defendant "during the month following the month" in which any order was accepted for the sale of orthobiologic products that Mr. Bollwinkel secretly made on Defendant's behalf, while he was still employed by Frontline and within Frontline's Field and Territory, pursuant to Sections 6.2 and 6.2.5 of the Agreement.

37. To date, Defendant has not paid Frontline any Service Fees for orthobiologic sales made by Mr. Bollwinkel since his employment with Defendant began, "during the month following" or otherwise.

38. From January 2021 to the present, Frontline has suffered a continuous decline in revenue as a direct result of Defendant's scheme outlined herein. Defendant's bad faith in presenting Amendment 3 and in its entire bad-faith scheme were a direct and proximate cause of Frontline's harm.

39. Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is excess of the jurisdictional minimum of this Court, as well as attorneys' fees and costs pursuant to Section 13.4 of the Agreement.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against All Defendants)

40. Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 39, inclusive, as though fully set forth herein.

41. Frontline and Defendant entered into a valid and binding written Agreement whereby Frontline agreed to "to serve [Defendant] as an independent contractor by representing [Defendant's] Products," and Defendant agreed to "retain the services of [Frontline] to represent the Products." (Agreement, Preamble.) Frontline performed all, or substantially all, of its duties arising from or related to the Agreement.

42. Frontline is informed and believes, and on that basis alleges, that between January 2021 and May 2022, Mr. Bollwinkel sold orthobiologic products within

Frontline's Field and Territory and reported the sales directly to Defendant while still employed by Frontline, entitling Frontline to the payment of Service Fees "during the month following the month" in which each respective order was accepted, pursuant to Sections 6.2 and 6.2.5 of the Agreement.  To date, Defendant has not paid Frontline *any* Service Fees for orthobiologic sales made by Mr. Bollwinkel since his employment with Defendant began, "during the month following" or otherwise.

43.     Further, on or about June 1, 2021, a representative of Frontline sold approved products within Frontline's Field and Territory, as documented in the Unpaid P.O., entitling Frontline to Service Fees "during the month following the month" in which the order was accepted, pursuant to Sections 6.2 and 6.2.5 of the Agreement.  To date, Defendant has not paid Frontline any Service Fees for the Unpaid P.O., "during the month following" or otherwise.

44.     By not receiving Service Fees based on the sales of its representatives, Defendant has breached the Agreement, repeatedly, and Frontline has suffered harm as a direct result.  Defendant's refusal to pay Frontline Service Fees pursuant to Section 6.2 of the Agreement is a substantial factor in causing Frontline's harm.

45.     Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is in excess of the jurisdictional minimum of this Court, as well as attorneys' fees and costs pursuant to section 13.4 of the Agreement.

## THIRD CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

### (Against All Defendants)

46.     Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 45, inclusive, as though fully set forth herein.

47.     In or about late January 2021, Defendant entered into an employment agreement with Mr. Bollwinkel whereby Mr. Bollwinkel would perform duties for Defendant that Mr. Bollwinkel was already contracted to perform for Frontline.

/ / /

48.     Frontline alleges on information and belief that Defendant intentionally failed to disclose the fact of Mr. Bollwinkel's dual employment status, and in fact intended to use Mr. Bollwinkel as a proverbial "double agent," while actively concealing discovery of this fact by instructing Mr. Bollwinkel not to divulge his new employment arrangement to Frontline based on the promise that Defendant would communicate the details itself.   Defendant never informed Frontline about its surreptitious agreement with Mr. Bollwinkel, and Frontline believes, and on that basis alleges, that Defendant never intended to inform Frontline of its secret agreement with Mr. Bollwinkel, or that Defendant was intending to use Mr. Bollwinkel to unlawfully commandeer revenues that Frontline was entitled to.

49.     Frontline did not discover Mr. Bollwinkel's dual employment status until March 2022.  Instead, Frontline unknowingly employed Mr. Bollwinkel for over one year while he performed only half of his contractual duties for Frontline, at Defendant's direction.  Had Frontline known of Mr. Bollwinkel's secret employment arrangement with Defendant, Frontline reasonably would have behaved differently, including by terminating Mr. Bollwinkel or sending another representative in his place to service the needs of Mr. Bollwinkel's assigned territory.

50.     From January 2021 to the present, Frontline has suffered a continuous decline in revenue as a result of the concealment of Mr. Bollwinkel's dual employment and "double agent" status.  Defendant's misconduct in concealing Mr. Bollwinkel's dual employment status for more than a year was a substantial factor in causing harm to Frontline.

51.     Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is excess of the jurisdictional minimum of this Court.

52.     Defendant's misconduct was undertaken with malice, fraud, or oppression, with an intent to harm Frontline.  Accordingly, Frontline is entitled to and prays for punitive damages under Civil Code section 3294 in an amount to be determined at trial.

-12-
**COMPLAINT**

# FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### (Against All Defendants)

53.     Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.     Beginning in or about May 2019, Frontline hired Mr. Bollwinkel as a sales representative, forming a contractual employment relationship with him to sell both hardware products and orthobiologic products.

55.     Frontline alleges based on information and belief that in or about January 2021, Defendant hired Mr. Bollwinkel to sell orthobiologic products for Defendant while continuing to sell hardware products for Frontline.  Further, Frontline alleges based on information and belief that Defendant instructed Mr. Bollwinkel not to inform Frontline of his new dual employment status, but that Defendant would inform Frontline.  However, Defendant never informed Frontline of Mr. Bollwinkel's new employment.   Instead, Frontline alleges based on information and belief that Defendant knowingly and intentionally concealed the fact of Mr. Bollwinkel's new employment from his employer Frontline.

56.     Frontline alleges based on information and belief that when Defendant offered Mr. Bollwinkel employment, it knew of Frontline's contractual relationship with Mr. Bollwinkel.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant intended to disrupt the performance of Frontline's contract or knew that disruption of its performance was certain or substantially certain to occur.

57.     Defendant engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's new employment from Frontline. As a direct result of Defendant's misconduct, Frontline's contractual relationship with Mr. Bollwinkel was disrupted and Frontline suffered substantial harm, as alleged above.  Defendant's wrongful conduct was a substantial factor in causing Frontline's

-13-

**COMPLAINT**

harm.

58.     Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is excess of the jurisdictional minimum of this Court.

59.     Defendant's conduct was undertaken with malice, fraud, or oppression, with an intent to harm Frontline.  Accordingly, Frontline is entitled to and prays for punitive damages under Civil Code section 3294 in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

### (Against All Defendants)

60.     Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 59, inclusive, as though fully set forth herein.

61.     Frontline alleges based on information and belief that in or about January 2021, Defendant hired Mr. Bollwinkel to sell orthobiologic products for Defendant while continuing to sell hardware products for Frontline.  Further, Frontline alleges based on information and belief that Defendant instructed Mr. Bollwinkel not to inform Frontline of his new dual employment status, but that Defendant would inform Frontline.  However, Defendant never informed Frontline of Mr. Bollwinkel's new employment.  Instead, Frontline alleges based on information and belief that Defendant knowingly and intentionally concealed the fact of Mr. Bollwinkel's new employment from Frontline and presented Mr. Bollwinkel as its own employee to Dr. Dazley and to St. Luke's.

62.     Beginning in or about May 2019, Frontline hired Mr. Bollwinkel as a sales representative, forming an economic relationship with him that resulted in ongoing economic benefit to Frontline and would have continued to produce economic benefit absent Defendant's interference.

/ / /

-14-
**COMPLAINT**

63.  Frontline alleges based on information and belief that Defendant knew of Frontline's relationship with Mr. Bollwinkel when Defendant offered Mr. Bollwinkel employment.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant intended to disrupt Frontline's relationship with Mr. Bollwinkel or knew that disruption of the relationship was certain or substantially certain to occur.

64.  Defendant engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's new employment from Frontline.  As a direct result of Defendant's misconduct, Frontline's relationship with Mr. Bollwinkel was disrupted and Frontline suffered substantial harm.  Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

65.  Beginning on or about September 1, 2018, Frontline formed an economic relationship with Dr. Dazley that resulted in ongoing economic benefit to Frontline and would have continued to produce economic benefit absent Defendant's interference.

66.  Frontline alleges based on information and belief that Defendant knew of Frontline's relationship with Dr. Dazley when Defendant hired Mr. Bollwinkel and presented him to Dr. Dazley as its own employee.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant intended to disrupt Frontline's relationship with Dr. Dazley or knew that disruption of the relationship was certain or substantially certain to occur.

67.  Defendant engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's new employment from Frontline while presenting Mr. Bollwinkel as its own employee to Dr. Dazley.  As a direct result of Defendant's misconduct, Frontline's relationship with Dr. Dazley was disrupted and Frontline suffered substantial harm. Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

/ / /

68.    Beginning on or about October 1, 2017, Frontline formed an economic relationship with St. Luke's that resulted in ongoing economic benefit to Frontline and would have continued to produce economic benefit absent Defendant's interference.

69.    Frontline alleges based on information and belief that Defendant knew of Frontline's relationship with St. Luke's when Defendant hired Mr. Bollwinkel and presented him to St. Luke's as Defendant's own employee.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant intended to disrupt Frontline's relationship with St. Luke's or knew that disruption of the relationship was certain or substantially certain to occur.

70.    Defendant engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's new employment from Frontline while presenting Mr. Bollwinkel as its own employee to St. Luke's.  As a direct result of Defendant's misconduct, Frontline's relationship with St. Luke's was disrupted and Frontline suffered substantial harm.  Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

71.    Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is excess of the jurisdictional minimum of this Court.

72.    Defendant's conduct was undertaken with malice, fraud, or oppression, with an intent to harm Frontline.  Accordingly, Frontline is entitled to and prays for punitive damages under Civil Code section 3294 in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(Against All Defendants)**

73.    Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 72, inclusive, as though fully set forth herein.

/ / /

-16-
**COMPLAINT**

74. Frontline alleges based on information and belief that in or about January 2021, Defendant hired Mr. Bollwinkel to sell orthobiologic products for Defendant while continuing to sell hardware products for Frontline. Further, Frontline alleges based on information and belief that Defendant instructed Mr. Bollwinkel not to inform Frontline of his new dual employment status, but that Defendant would inform Frontline. However, Defendant never informed Frontline of Mr. Bollwinkel's new employment. Instead, Frontline alleges based on information and belief that Defendant knowingly and intentionally concealed the fact of Mr. Bollwinkel's new employment from Frontline and presented Mr. Bollwinkel as its own employee to Dr. Dazley and to St. Luke's.

75. Beginning in or about May 2019, Frontline hired Mr. Bollwinkel as a sales representative, forming an economic relationship with him that resulted in ongoing economic benefit to Frontline and would have continued to produce economic benefit absent Defendant's interference.

76. Frontline alleges based on information and belief that Defendant knew or should have known of Frontline's relationship with Mr. Bollwinkel when Defendant offered Mr. Bollwinkel employment. Frontline further alleges on information and belief that by engaging in such misconduct, Defendant knew or should have known that Frontline's relationship with Mr. Bollwinkel would be disrupted if Defendant failed to act with reasonable care.

77. Defendant failed to act with reasonable care and engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's new employment from Frontline. As a direct result of Defendant's misconduct, Frontline's relationship with Mr. Bollwinkel was disrupted and Frontline suffered harm. Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

78. Beginning on or about September 1, 2018, Frontline formed an economic relationship with Dr. Dazley that resulted in ongoing economic benefit to Frontline

-17-
**COMPLAINT**

and would have continued to produce economic benefit absent Defendant's interference.

79.     Frontline alleges based on information and belief that Defendant knew of Frontline's relationship with Dr. Dazley when Defendant hired Mr. Bollwinkel and presented him to Dr. Dazley as its own employee.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant knew or should have known that Frontline's relationship with Dr. Dazley would be disrupted if Defendant failed to act with reasonable care.

80.     Defendant failed to act with reasonable care and deliberately engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's dual employment status from Frontline, and also in presenting Mr. Bollwinkel as its own employee to Dr. Dazley.  As a direct result of Defendant's misconduct, Frontline's relationship with Dr. Dazley was disrupted and Frontline suffered harm.  Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

81.     Beginning on or about October 1, 2017, Frontline formed an economic relationship with St. Luke's that resulted in ongoing economic benefit to Frontline and would have continued to produce economic benefit absent Defendant's interference.

82.     Frontline alleges based on information and belief that Defendant knew of Frontline's relationship with St. Luke's when Defendant hired Mr. Bollwinkel and presented him to St. Luke's as its own employee.  Frontline further alleges on information and belief that by engaging in such misconduct, Defendant knew or should have known that Frontline's relationship with St. Luke's would be disrupted if Defendant failed to act with reasonable care.

83.     Defendant failed to act with reasonable care and deliberately engaged in wrongful conduct through knowingly and intentionally concealing the fact of Mr. Bollwinkel's dual employment status from Frontline, and also in presenting Mr. Bollwinkel as its own employee to St. Luke's.  As a direct result of Defendant's

misconduct, Frontline's relationship with St. Luke's was disrupted and Frontline suffered harm.  Defendant's wrongful conduct was a substantial factor in causing Frontline's harm.

84.    Frontline is entitled to and prays for compensatory damages, in an amount to be proven at trial that is excess of the jurisdictional minimum of this Court.

85.    Defendant's conduct was undertaken with malice, fraud, or oppression, with an intent to harm Frontline.  Accordingly, Frontline is entitled to and prays for punitive damages under Civil Code section 3294 in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

## VIOLATION TO CALIFORNIA'S UNFAIR COMPETITION LAW (BUS. & PROF. CODE, § 17200, *et seq*)

### (Against All Defendants)

86.    Frontline incorporates, restates, and re-alleges the allegations contained in paragraphs 1 through 85, inclusive, as though fully set forth herein.

87.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair," or "fraudulent" business practice.

88.    California Business and Professions Code section 17204 allows a person injured by unfair business acts or practices to prosecute a civil action for violation of the UCL.

89.    Frontline believes, and on that basis alleges, that Defendant unlawfully breached the implied covenant of good faith and fair dealing by presenting Amendment 3 to Frontline as part of a scheme to drive Frontline out of business and frustrated the purpose of the Agreement and Frontline's rights to the benefits thereof. Further, Defendant unlawfully interfered with Frontline's contractual and prospective economic relations by hiring Mr. Bollwinkel as a secret "double agent," and unlawfully concealing Mr. Bollwinkel's dual employment status and his role in

Defendant's unlawful scheme from Frontline, his employer.

90.    As a result of Defendant's unlawful business practices, Frontline has been harmed, and will continue to be harmed, and is entitled to restitution and the disgorgement of profits illicitly made by Defendant as a direct result of its unlawful business practices described herein.

## PRAYER

Frontline prays for judgment against Defendants, and each of them, and, to the extent provided by law, relief as follows:

**As to Frontline's First and Second Causes of Action**

1.    For compensatory damages, in an amount to be proven at trial;

2.    For attorneys' fees and costs pursuant to Section 13.4 of the Agreement;

**As to Frontline's Third Through Sixth Causes of Action:**

3.    For compensatory damages, in an amount to be proven at trial;

4.    For punitive damages under California Civil Code section 3294, in an amount to be determined at trial;

**As to Frontline's Seventh Cause of Action:**

5.    For restitution, in an amount to be proven at trial;

6.    For disgorgement of profits, in an amount to be proven at trial; and

**As to All Causes of Action:**

7.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Frontline herein demands a trial by jury of all issues in this action.

Date: January 13, 2023           **GODES & PREIS, LLP** By:

_/s/ Joseph M. Preis_
Joseph M. Preis
Oliver B. Dreger
Richard K. Angel
Attorneys for Frontline
FRONTLINE SERVICES, INC.

-20-
**COMPLAINT**